[Cite as *Collier v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-4304.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ANDRE COLLIER

     Plaintiff

     v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

     Defendant
     Case No. 2009-05978

Judge Clark B. Weaver Sr.
Magistrate Matthew C. Rambo

MAGISTRATE DECISION

{¶ 1} Plaintiff brought this action alleging negligent training and supervision.[1] The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} As an initial matter, on June 30, 2010, defendant filed motions to quash the subpoenas issued for Unit Sergeant Werner, Alice Cain, Corrections Lieutenant Iceman, D.A. Coble, Tim Milligan, Corrections Officer (CO) Tracy Cutright, Kelly Riehle, C. Sayers, Corrections Lieutenant Dunn, CO Kinder, CO Rahman, unnamed healthcare administrator, and unnamed state highway patrol trooper. The motions concerning Cain and Iceman are DENIED as moot, inasmuch as they appeared for trial. The motion concerning Werner is GRANTED pursuant to Civ.R. 45(C)(3(d). Defendant argues that the proper witness and mileage fees were not tendered upon service of the remaining subpoenas. The court notes that improper or failure of service is not a basis

---

[1] Plaintiff's assault claim, medical claim, and constitutional claims were dismissed by the court on June 30, 2010.

for quashing a subpoena pursuant to Civ.R. 45(C)(3). Accordingly, defendant's remaining motions are DENIED. However, inasmuch as plaintiff did not provide the appropriate witness fees, the court finds that the subpoenas were not properly served pursuant to Civ.R. 45(B), and are therefore not enforceable.

{¶ 3} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Marion Correctional Institution (MCI) pursuant to R.C. 5120.16. On March 31, 2008, plaintiff was transported to the Corrections Medical Center for treatment for hemorrhoids. After treatment, plaintiff was placed in handcuffs and leg irons and put into "holding area 2A" with several other inmates to await transport back to MCI. Plaintiff testified that he asked the CO posted to the area to remove his handcuffs so that he could use the restroom and that the CO granted his request. According to plaintiff, when he returned from the restroom, the CO was eating and plaintiff sat down to watch television while the CO finished his repast. Several minutes later, Tracy Cutright, a CO from the Belmont Correctional Institution, entered the area and called for inmate Taylor; however, no one responded and Cutright left the area.

{¶ 4} Plaintiff testified that after Cutright left, he observed inmate Taylor sleeping. A short period of time later, Cutright returned and again called Taylor's name. According to plaintiff, Taylor awoke and slowly responded to Cutright's summons. Plaintiff testified that Cutright berated Taylor for not answering him the first time and for being slow. Plaintiff stated that he interjected that Cutright should "go easy" on Taylor because he has a "sleeping disease." According to plaintiff, this made Cutright angry and, as a result, Cutright removed both plaintiff and Taylor from the area and took them into a locked room. Plaintiff testified that Cutright ordered him to face the wall and then threatened to beat him. Plaintiff stated that he told Cutright that he "wasn't going to fight him," at which point Cutright grabbed his right ear and twisted it, then he and Cutright exchanged more "words." Plaintiff testified that the exchange escalated to the point where Cutright placed his right arm in an "arm bar," slammed him to the floor, and

stepped on his right hand. According to plaintiff, another CO entered the room and removed Taylor, while Cutright placed plaintiff in handcuffs. Plaintiff stated that he and Cutright then had another verbal exchange when Cutright ordered him to stand up, which was difficult due to the handcuffs and leg irons. Plaintiff stated that at that point, four other COs entered the room and took him to an isolation cell.

{¶ 5} Plaintiff testified that although he obtained a conduct report during discovery regarding the incident that appears to be signed by Cutright, he did not receive a copy of it after the incident and was not disciplined for the incident. (Plaintiff's Exhibit 4.) Corrections Lieutenant Thomas Iceman testified that the conduct report referenced by plaintiff does not appear as if it was ever processed and that no "charges" were filed in connection with it.

{¶ 6} In order for plaintiff to prevail on a claim for negligent training and supervision, he must prove: 1) the existence of an employment relationship; 2) the employee's incompetence; 3) the employer's actual or constructive knowledge of such incompetence; 4) the employee's act or omission causing plaintiff's injuries; and 5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Evans v. Ohio State Univ.* (1996), 112 Ohio App.3d 724.

{¶ 7} There is no dispute that Cutright was employed by defendant at the time of the incident. Plaintiff alleges that Cutright used excessive force against him during the March 31, 2008 incident which amounts to "incompetence."

{¶ 8} The Ohio Administrative Code sets forth the circumstances under which force may be lawfully utilized by prison officials and employees in controlling inmates. Ohio Adm.Code 5120-9-01(C) provides, in relevant part:

{¶ 9} "(2) Less-than-deadly force. There are six general circumstances in which a staff member may use force against an inmate or third person. A staff member may use less-than-deadly force against an inmate in the following circumstances:

{¶ 10} "(a) Self-defense from physical attack or threat of physical harm;

{¶ 11} "(b) Defense of another from physical attack or threat of physical attack;

{¶ 12} "(c)   When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders;

{¶ 13} "(d)   When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance;

{¶ 14} "(e)   Prevention of an escape or apprehension of an escapee; or

{¶ 15} "(f)   Controlling or subduing an inmate in order to stop or prevent self-inflicted harm."

{¶ 16} The court has recognized that "corrections officers have a privilege to use force upon inmates under certain conditions.  * * *  However, such force must be used in the performance of official duties and cannot exceed the amount of force which is reasonably necessary under the circumstances.  * * *  Obviously 'the use of force is a reality of prison life' and the precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer."  *Mason v. Ohio Dept. of Rehab. & Corr.*  (1990), 62 Ohio Misc.2d 96, 101-102.   (Internal citations omitted.)

{¶ 17} Based upon plaintiff's testimony, the court finds that the force he alleges that Cutright used against him was not excessive and no more than necessary to "control or subdue" plaintiff after he argued with Cutright.  Accordingly, plaintiff has failed to prove Cutright's "incompetence," and therefore cannot meet his burden of proof with respect to his negligent training and supervision claim.

{¶ 18} Based upon the foregoing, judgment is recommended in favor of defendant.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual*

*finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
MATTHEW C. RAMBO
Magistrate

cc:

Amy S. Brown                          Andre Collier, #233-115
Emily M. Simmons                      London Correctional Institution
James P. Dinsmore                     P.O. Box 69
Jennifer A. Adair                     London, Ohio 43140
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

MR/cmd
Filed August 12, 2010
To S.C. reporter September 9, 2010